IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DEVON HODGES; | ) | |
| Plaintiff; | ) | |
| | ) | |
| v. | ) | Case No. |
| | ) | JURY DEMAND |
| VALLEY VIEW COMMUNITY UNIT SCHOOL | ) | |
| DISTRICT 365U; JAMES BOUDORIS; | ) | |
| JEFFREY BAMBULE; | | |
| Defendants. | ) | |

COMPLAINT

NOW COMES Plaintiff, DEVON HODGES, by his undersigned counsel, and complaining against Defendants, states as follows:

Jurisdiction

1. This Court has jurisdiction over the parties to this dispute, as the Defendants include a school district in Will County, Illinois.

2. This Court has jurisdiction over the subject matter of this dispute, as the events giving rise thereto occurred in Will County, Illinois; and as the dispute concerns questions arising under the First and Fourteenth Amendments to the U.S. Constitution and 42 U.S.C. §1983.

1

Parties/Venue

3. Plaintiff resided in Will County, Illinois, at the time of the events giving rise to this Complaint.

4. Defendant Valley View Community School Unit 365U is a school district and unit of local government located in Will County, Illinois.

5. Defendants BOUDORIS and BAMBULE are employed by Defendant Valley View as coaches (the athletic director and head basketball coach, respectively, at Romeoville High School).

6. Defendant Illinois High School Association (hereinafter "IHSA") is one of 521 state high school associations in the United States, designed to regulate competition in most interscholastic sports and some interscholastic activities at the high school level. It is a charter member of the National Federation of State High School Associations (NFHS). The IHSA regulates 14 sports for boys, 14 sports for girls, and eight co-educational non-athletic activities. More than 760 public and private high schools in the state of Illinois are members of the IHSA. The Association's offices are in Bloomington, Illinois.

## Facts/Backgound

5. Plaintiff was a student who attended the high schools of Defendant Valley View C.U.S.D. 365U (hereinafter "Valley View"), during the time of the events alleged in this Complaint.

6. Plaintiff endured unfathomable abuse, harassment, and even torture throughout his high school years, all over basketball and its attendant greed and idolatry which infects and infests high school officials to the hurt of students.

7. In November, 2009, plaintiff, who played and displayed tremendous prowess in high school basketball, transferred from Romeoville High School (RHS) (in Defendant Valley View District) to Bolingbrook High School (BHS) (also in Defendant Valley View District).

8. This is when plaintiff's nightmare began, as RHS coaches (including BAMBULE and BOUDORIS) desiring to have plaintiff remain playing basketball for RHS, sought to compel that to happen (or else retaliate against plaintiff and his family for transferring to BHS).

9. In November, 2009, plaintiff began hearing from students at RHS that RHS head basketball coach BAMBULE was badmouthing him to other people (including students) for having transferred to BHS.

10. Also in November, 2009, plaintiff's step-father was informed that defendants BAMBULE and BOUDORIS were planning to force plaintiff to return to RHS by beginning an investigation and fabricating a charge that plaintiff did not legally reside in the BHS district.

11. Upon information and belief, BAMBULE and/or BOUDORIS would drive past plaintiff's home to check on who lived there, and to check on whether plaintiff's home was for sale.

12. Upon information and belief, BAMBULE, who expressed intent to "get" (retaliate against) plaintiff for "leaving" RHS, threatened to call defendant IHSA against plaintiff.

13. An investigation into residency was commenced against plaintiff in November, 2009, and plaintiff's mother provided proof of proper residency in response.

14. Someone from RHS made harassing prank calls to plaintiff's family in November, 2009, continuing until January 2010, and BAMBULE harassed plaintiff through third parties (by texting and speaking to such third parties) due to him attending and playing basketball for BHS.

15. BAMBULE also harassed plaintiff's mother regarding another student who stayed temporarily with her and the family; a student over whom she had obtained guardianship at the time.

16. Plaintiff's mother filed a complaint with Defendant VALLEY VIEW and the Superintendent in November 2009, and defendant IHSA convinced plaintiff's mother to withdraw the complaint by urging that the district would come under scrutiny, and the basketball program would be shut down for 90 days, if she did not withdraw the complaint.

17. Plaintiff's mother only agreed to withdraw the complaint on the condition that BAMBULE and BOUDORIS would promise to leave plaintiff alone, ceasing from driving or riding past his home, texting and questioning his friends, prank calling, attacking plaintiff's character, and other such acts of harassment.

18.     BAMBULE and BOUDORIS agreed to said conditions, and plaintiff's mother withdrew the complaint in November, 2009.

19.     However, BAMBULE did not keep his end of the bargain; he continued to badmouth plaintiff, even telling other students that plaintiff is "stupid" because he had been in special education classes and had an Individualized Education Plan (IEP). Not only was this information leaked, but plaintiff's family was informed that banners, posters, shirts, etc. were going to be made suggesting plaintiff was stupid, dumb, and in special education, which would be on display for the annual Romeoville and Bolingbrook Boys Rival Game. The posters, banners, and such were being made in the classroom of BAMBULE.

20.     Plaintiff's mother notified an Investigator, with the District, namely Harris Franklin, who said he would address the issue and find out if any banners, posters, shirts, etc. were being made. Franklin called plaintiff's mother to inform that he had spoken with both Coach BAMBULE as well as Athletic Director BOUDORIS and advised them that there was to be nothing of the sort made at all. When plaintiff and his family arrived at RHS for the basketball game against

6

BHS (the annual rival game) there were no signs. However, when Coach BAMBULE saw plaintiff, he threw a temper tantrum and had to be taken out of the gym by BOUDORIS.

21. BAMBULE had also told his basketball team during the summer 2010 session that had it not been for plaintiff leaving the previous season they would have had a more successful season, and that plaintiff could never attend a Division 1 college because of bad "baggage," and continued texting and speaking with friends and acquaintances of plaintiff, digging for information about him and his residency, and badmouthing him.

22. BAMBULE even stalked plaintiff and his family, showing up at a basketball tournament in Indiana in which plaintiff was a player, having no good reason to be there, and walking past plaintiff while he was in the lay-up line.

23. The stalking continued as an assistant coach under BAMBULE (Pat Porter) drove past plaintiff's home unnecessarily on one occasion.

24. Plaintiff's mother had requested that plaintiff be allowed to remain at BHS for his senior year, and was instructed on what she

thought was the proper procedure for requesting such an exception. However, on August 2, 2010, she was informed that plaintiff was enrolled at RHS and that his class schedule had already been pulled from the BHS system.

25. In addition, Robert Leach of SWSportsNest.com wrote articles about plaintiff which appeared to track his every move (even regarding him doing yard work at a residence within the RHS district), and accusing him of having played for schools which he never attended.

26. The stalking continued when Leach and BAMBULE followed plaintiff and his step-father, and were discovered doing such at a gas station at Weber and Taylor Roads in Plainfield, Illinois.

27. On August 9, 2010, plaintiff's mother spoke with the BHS principal, who advised her that he did not object to plaintiff remaining at BHS, and that he had already met with some RHS faculty about plaintiff.

28. Plaintiff's mother re-opened her complaint with Defendant VALLEY VIEW in August, 2010, and had even approached the Will

County State's Attorney's Office and the Will County Sheriff's Office about the complaint.

29. On August 12, 2010, plaintiff, his mother and step-father, the RHS principal, BAMBULE, BOUDORIS, and District Investigator Franklin met over the above mentioned incidents. The meeting was a sham: the RHS principal refused to acknowledge plaintiff's mother's earlier complaints, and refused to believe that BAMBULE and BOUDORIS were guilty of any wrongdoing.

30. Plaintiff's mother had advised the Bolingbrook principal that she was going to reopen her complaint from November 2009, and the Bolingbrook principal advised her that the best thing to do would be to find a family member who lived in Bolingbrook and give temporary guradianship to so he could stay at Bolingbrook as a student. He advised her that he had talked with the superintendent the day before and the superintendent did not make any mention of plaintiff being granted any exception.  He told plaintiff's mother that the exception would not be granted anyway because Romeoville wanted him back too badly and that he was their star basketball athlete.

31. Not feeling safe about her son attending RHS after the past year of retaliation, plaintiff's mother transferred guardianship of plaintiff to her husband's grandfather who resided in Bolingbrook, in August 2010.

32. The District refused to honor this, and forced plaintiff to attend school at RHS, where as expected he was harassed routinely.

<u>Count I: 42 U.S.C. §1983: First Amendment Retaliation (All Defendants)</u>

33. Plaintiff realleges paragraphs 1 through 32 above and incorporates them herein.

34. Defendants have engaged in retaliation against Johnson for his exercise of his clearly established First Amendment right to freedom of association.

35. Defendants knew or reasonably should have known that Plaintiff had and has a clearly established First Amendment right (freedom of association) to attend the school of his choice, as long as he met residency and all other requirements, and they nevertheless proceeded to effect retaliation against him for his

exercise of said First Amendment rights by effecting the egregious harassment described above against him and his family.

36. As a result of its' actions, Defendants caused plaintiff to suffer and continue to suffer great emotional and physical anguish.

Plaintiff

By: s/ Jason R. Craddock
Jason R. Craddock
Attorney for Plaintiff
29 S. LaSalle—Suite 440
Chicago, Illinois 60603
(312) 629-2818