# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 11 C 8418 | **DATE** | 12/21/2012 |
| **CASE TITLE** | Devon Hodges vs. Valley View Community Unit School District 356U, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons set forth in this order, the Court grants in part and denies in part the Valley View defendants' motion to dismiss the second amended complaint[63]. Count IV is dismissed with prejudice, Counts I, III and V are dismissed without prejudice and Counts II and VI stand. Plaintiff has fourteen days from the date of this order to amend Counts I, III and V to state viable claims, if he can do so and comply with Rule 11. If plaintiff fails to amend the claims in that time, the Court will dismiss them with prejudice.

■[ For further details see text below.]　　　　　　　　　　　　　　　　　　　　　　　　Docketing to mail notices.

## STATEMENT

　　　In November 2009, plaintiff moved from the attendance area of Romeoville High School ("RHS"), where he was a star of the basketball team, to the attendance area of Bolingbrook High School ("BHS"), both of which are in defendant Valley View Community Unit School District 365U. (2d Am. Compl. ¶ 9.) Thereafter, he alleges, Valley View staff members James Boudoris, Jeffrey Bambule, Alec Anderson, Robert Brost, Paul Gammichia, Art Pahl and James Mitchem, Jr. falsely accused him of residency violations, spread false rumors about him, sabotaged his meetings with college recruiters and otherwise harassed him for leaving the RHS basketball team. In his second amended complaint, plaintiff asserts 42 U.S.C. § 1983 claims against these defendants, and two others who are not parties to this motion, for their alleged violations of his constitutional rights and an indemnification claim against Valley View pursuant to the Illinois Tort Immunity Act. The Valley View defendants ask the Court to dismiss all of the claims pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).

　　　On a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded factual allegations of the complaint, drawing all reasonable inferences in plaintiff's favor. *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009). "[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" but must contain "enough facts to state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

　　　In Count I of the second amended complaint, plaintiff asserts a First Amendment retaliation claim against the individual Valley View defendants. To state a viable claim, plaintiff must allege that he engaged in constitutionally protected speech, defendants took adverse action against him and their action was motivated, at least in part, by plaintiff's speech. *Springer v. Durflinger*, 518 F.3d 479, 483 (7th Cir. 2008). The first element is lacking here because plaintiff alleges that defendants' retaliation was prompted by his mother's speech, not his own. (*See, e.g.,* 2d Am. Compl. ¶¶ 18, 21, 30, 35, 39, 45-47, 55-57, 60-62.) Count I is, therefore, dismissed.

In Count II, plaintiff asserts an equal protection class of one claim against the individual defendants. Such a claim requires allegations that defendants "intentionally treated [plaintiff] differently from others similarly situated and that there is no rational basis for the difference in treatment."[1] *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (quotation omitted). Plaintiff alleges that, unlike other students whose families move within the District during a school year, defendants tried to harass him into continuing to attend RHS. (2d Am. Compl. ¶ 9.) He does not, however, identify a similarly situated student who was treated differently, which defendants contend *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937 (7th Cir. 2010) requires him to do. *See id.* at 942 ("[D]ismissal at the pleading stage was appropriate because LaBella failed to allege facts tending to show that it was similarly situated to any of the comparators."). After *LaBella*, however, the Seventh Circuit ruled that in "[an] official harassment case," like this one, "forcing the plaintiff to name a person not so severely harassed serves no . . . purpose (and in any event certainly is not necessary in the complaint itself)." *Geinosky v. City of Chi.*, 675 F.3d 743, 746 (7th Cir. 2012). Thus, plaintiff's failure to identify a similarly situated person is not a basis for dismissing this claim.

Nor is qualified immunity, which shields public officials from liability for conduct that "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). It was clearly established in 2009 that the equal protection clause forbids government officials from "intentionally treat[ing] [someone] differently from others similarly situated . . . [without a] rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam). Therefore, assuming, as we must, that plaintiff's allegations are true, qualified immunity is not a basis for dismissal.

In Count III, plaintiff alleges that defendants' conduct violated his substantive due process rights. To state a viable claim, plaintiff must specifically identify the fundamental liberty interest that he contends defendants have violated. *Kahn v. Gallitano*, 180 F.3d 829, 833 (7th Cir. 1999). Such interests include "the specific freedoms protected by the Bill of Rights [and] . . . the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity and to abortion." *Washington v. Gluckberg*, 521 U.S. 702, 720 (1997) (citations omitted). Because plaintiff does not identify any such interest, the Court dismisses Count III.

In Count IV, plaintiff seeks to hold the Board liable for the equal protection violation alleged in Count II.[2] To do so, plaintiff must allege that the constitutional violation resulted from, among other things, action by person with final policymaking authority. *See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978); *McCormick v. City of Chi.*, 230 F.3d 319, 324 (7th Cir. 2000). According to plaintiff, the final policymaker in this case is defendant Mitchem, the District Superintendent.

State law determines whether an official has final policymaking authority, which "may be granted directly by statute or delegated . . . by an[other] official." *Kujawski v. Bd. of Comm'rs of Bartholomew Cnty.*, 183 F.3d 734, 737 (7th Cir. 1999). However, "[t]he fact that a[n] official . . . has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." *Valentino v. Vill. of S. Chi. Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (quotation omitted). Rather, the official must have the authority to set, not just the responsibility to execute, policy for the contested issue. *Id.* at 675-76.

Illinois law vests the Valley View School Board with the power to: (1) "assign pupils to the several schools in the district"; and (2) "adopt and enforce all necessary rules for the management and government of the public schools of their district." *See* 105 Ill. Comp. Stat. 5/10-20.5, 10-22.5. The Board's rules require the Board "[to] review and approve the school attendance boundaries for all students residing in the District" but give the Superintendent discretion to permit a student whose family moves from one attendance area to another during

| STATEMENT |
|---|

the school year "to complete the current school year at the first attendance center." *See* Board Policy § 7:30, *available at* http://www.vvsd.org/docs/pdf/boe/policy/section7/7.30%20Student%20Assignmentx.pdf. In other words, though the Superintendent has some discretion in executing it, the Board is the final policymaker with respect to student/school assignments. Thus, any action taken or approved by Mitchem with respect plaintiff's transfer is not, as a matter of law, a basis for holding the Valley View Board liable for the alleged equal protection violation.

In Count V, plaintiff alleges that the Valley View defendants conspired with the two other defendants named in this suit, the Illinois High School Association ("IHSA")[3] and its Executive Director Marty Hickman, to deprive him of his equal protection rights. To state a § 1983 conspiracy claim, plaintiff must allege that: "(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participants in joint activity with the State or its agents." *Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir. 1998) (quotations, alterations and citations omitted). Though plaintiff alleges in great detail the correspondence among his mother, the Valley View defendants and the IHSA defendants concerning plaintiff's residence in the attendance area of, and eligibility to pay basketball for, BHS, they do not support the inference that the private and public actor defendants agreed to deprive plaintiff of his equal protection rights. (*See* 2d Am. Compl. ¶¶ 37, 41, 67, 69-74, 77, 83-89, 92-93.) On the contrary, the only inference that these allegations support is that certain Valley View defendants refused to press and/or attempted to defeat plaintiff's case with the IHSA, but when plaintiff's mother took action on her own, the IHSA ruled that plaintiff was eligible to play for BHS. (*See id.*) Accordingly, plaintiff has not stated a viable conspiracy claim.

Finally, defendants seek to have Count VI, an indemnification claim against Valley View pursuant to section 9-102 of the Illinois Tort Immunity Act, dismissed because that section "does not create an independent cause of action." (Mem. Law Supp. Mot. Dismiss 2d Am. Compl. at 17.) The Seventh Circuit disagrees. *See Wilson v. City of Chic.*, 120 F.3d 681, 685 (7th Cir. 1997) (stating that a section 9-102 claim against the City of Chicago was, "[i]n effect, [a request that] the court . . . enter a declaratory judgment against the City, a typical move when an insurer (as the City in effect is of the judgment against Burge) is in the picture, and one not invalidated by its conditional character."). Thus, Count VI stands.

1. Plaintiff must also allege that each defendant was "personally responsible for the deprivation of the right at the root of a § 1983 claim," but defendants do not argue that this element is lacking. *See Backes v. Vill. of Peoria Heights*, 662 F.3d 866, 869 (7th Cir. 2011) (quotation omitted).

2. Plaintiff also seeks to hold Valley View liable for the constitutional violations alleged in Counts I and III but, because neither of those counts states a viable claim, the Court construes Count IV solely as an equal protection claim.

3. The IHSA is "a not-profit organization . . . . [that] is not funded . . . or administered by the government in the state of Illinois." *See* http://www.ihsa.org/AbouttheIHSA.aspx.